UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE. NO. 25-20416-CR-MARTINEZ

UNITED STATES OF AMERICA

vs.

RAFAEL ALBERTO VARGAS GONZALEZ,

Defendant.
_______________________________________________/

# FACTUAL PROFFER

If this matter were to proceed to trial, the Government would prove the following facts beyond a reasonable doubt. The Parties agree that these facts, which do not include all facts known to the Government and the defendant Rafael Alberto Vargas Gonzalez (hereinafter "the Defendant"), are sufficient to prove the guilt of the Defendant as to Count 7 of the Indictment.

Law enforcement's investigation has consisted of witness and victim interviews, public records checks, law enforcement surveillance, search warrant and grand jury subpoena results, forensic cell phone analysis, reviews of various banking, financial, and business records and documents, and other investigative techniques. As set forth in the Indictment, law enforcement's investigation uncovered that, beginning in and around December 2017, and continuing through in or around April 2024, the Defendant operated a crypto-Ponzi, money laundering, and unlicensed money transmitting schemes through, and for the benefit of, his crypto-based investment companies Empirex Capital LLC ("Empirex"), NKC Management LLC ("NKC Management"), and Cryptox Hub LLC ("Cryptox Hub"). The Defendant's Ponzi scheme, which he operated at Empirex along with co-defendant Catherine Giovanna Rojas-Escobar ("co-defendant Rojas"), Roman David Acero Quintero ("co-defendant Acero"), and others, involved over 450 victims

throughout the United States and Colombia, with losses totaling approximately $16 million. Ultimately, the Defendant's accompanying money laundering and unlicensed money transmitting schemes—which involved the laundering of proceeds derived from both drug trafficking and the Defendant's Ponzi scheme through various shell companies and feeder bank accounts owned and controlled by the Defendant and his co-defendants—totaled approximately $81 million dollars. The individuals and co-defendants involved in the scheme, including the Defendant, knew that these financial transactions involved some form of unlawful activity.

During all pertinent times of which the offenses were committed, the Defendant was the chief executive officer and listed manager, managing member, organizer, and registered agent of Empirex, NKC Management, and Cryptox Hub. The Defendant was the sole signatory on Empirex's cryptocurrency wallet with Kraken and sole owner and operator of a cryptocurrency wallet with Binance. The Defendant was the sole owner and signatory of personal bank accounts at Bank of America ("BoA"), Capital One Bank ("Capital One"), Citibank, N.A. ("Citibank"), Citizens Bank ("Citizens"), and Regions Bank ("Regions"). The Defendant was the sole signatory of Empirex bank accounts at Amerant Bank ("Amerant"), BoA, Citibank, Coastal Community Bank ("Coastal Community/Bluevine"), Cross River Bank ("Cross River"), Evolve Bank & Trust ("Evolve"), JP Morgan Chase Bank ("JPMC"), Santander Bank ("Santander"), TD Bank, Truist Bank ("Truist"), and Wells Fargo bank. The Defendant was the sole signatory of NKC Management's bank accounts at Coastal Community/Bluevine, Citizens, and Regions.

As it relates to the Ponzi scheme, the Defendant, co-defendant Rojas, and others created, or caused to be created, false and fraudulent Empirex marketing materials to provide, via email, their website (www.empirexcapital.com), social media platforms, and other means of interstate wire communication, to investors and prospective investors. Empirex's fraudulent marketing materials and website offered investment opportunities as follows: a "traditional portfolio," which

purported to include stocks, bonds, and commodities; and a "crypto portfolio," which purported to include cryptocurrency assets. Empirex's marketing materials fraudulently claimed that Empirex operated in offices in New York, Dubai, and Hong Kong. The Defendant and co-defendant Rojas provided victims with "investment agreements" in relation to their bogus "traditional portfolio" and "crypto portfolio" investment opportunities, which were offered in three-month, six-month, and one-year lengths; ensured investment liquidity; and guaranteed fixed 5% to 29% rates of return to be paid out monthly.

The Defendant and co-defendant Rojas never allowed investors to access their Empirex funds or view how Empirex utilized investor proceeds. They never utilized or administered investor accounts. They also created and distributed – via email - bogus monthly Empirex "account statements" to Ponzi investors. Based on victim interviews, co-defendant Rojas was primarily responsible for communicating with victims and providing them with these "account statements." These "account statements" were falsely and fraudulently created and distributed to induce continued investment, discourage withdrawals, and to further the fraud scheme.

As set forth in the indictment and above, from July 2018, through April 2022, the Defendant opened Empirex accounts – either in-person or via the internet - with 10 different banks: Amerant, BoA, Citibank, Coast Community/Bluevine, Cross River, Evolve, JPMC, Santander, TD Bank, Truist, and Wells Fargo. During December 2018, co-defendant Rojas also began utilizing a Bancolombia account in Colombia for Empirex business – specifically for their Colombia-based victims. The Defendant and co-defendant Rojas opened and utilized these different accounts because banks regularly closed Empirex and related accounts, all of which the Defendant and co-defendant Rojas concealed from Ponzi investors and prospective investors.

As Empirex collapsed financially, the Defendant shifted the fraud scheme to NKC Management. During May 2022, through July 2023, the Defendant opened multiple NKC

Management bank accounts at Citizens, Coastal Community/Bluevine, and Regions. Around this same time, the Defendant began soliciting, often via in-person meetings, new Ponzi investors utilizing NKC Management. Similar to the Empirex scheme, the Defendant provided these new investors with NKC Management "investment agreements" in relation to the same materially false and fraudulent "traditional portfolio" and "crypto portfolio" investment opportunities. Notably, the NKC Management "investment agreements" purported to "on behalf of Empirex Capital LLC," contained a Coral Gables address, and were falsely and fraudulently offered in three-month, six-month, and one-year lengths, and ensured investment liquidity and guaranteed fixed 5% to 29% rates of return to be paid out monthly. The Defendant also created and distributed false monthly account statements to NKC Management Ponzi investors. The monthly account statements purported to be from Empirex and show an investor's investment amount and alleged gains and profits. In fact, as the Defendant knew NKC Management did not create, utilize, or administer investor accounts, did not allow investors to access or utilize their investment funds or view how the Defendant and NKC Management actually utilized investor proceeds. The monthly account statements were falsely and fraudulently created and distributed to induce the continued investment, discourage withdrawals, and to further the fraud scheme. From May 2022, through December 2023, the NKC Ponzi investors provided the Defendant approximately $1.2 million, via interstate wire transfers, to NKC's bank accounts and the Defendant's personal Regions account. The Defendant falsely and fraudulently utilized these funds from NKC Management Ponzi investors for his own use and benefit, and to further the fraud scheme.

Law enforcement's investigation revealed that most of the funds deposited into Empirex and NKC Management accounts were drug trafficking proceeds; however, the Defendant was not aware that these funds were derived from drug trafficking. A portion of the money laundering scheme also entailed the use of various money couriers—individuals who accepted and deposited

proceeds of drug trafficking into accounts at financial institutions throughout the United States—that operated in 29 different States. The vast majority of these drug trafficking proceeds were then funneled to the Defendant, via various Empirex, NKC Management, and personal bank accounts owned and controlled by the Defendant, who sent the proceeds via cryptocurrency directly to Mexican money broker Juan Carlos Minero Alonso ("co-defendant Minero") as instructed. In turn, co-defendant Minero further laundered the proceeds by transferring the money to the intended recipients via multiple, untraceable private cryptocurrency addresses, across multiple blockchains. In total, approximately $65 million in drug trafficking proceeds were laundered by the Defendant and his co-defendants.

As a result of the Defendant's international crypto-Ponzi, money laundering, and unlicensed money transmitting schemes, he utilized and appropriated approximately $4,376,896.00 for his own personal use and benefit.

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

Date: 8/31/26 By: ______________________
MICHAEL SARTOIAN
ASSISTANT UNITED STATES ATTORNEY

Date: 8/31/26 By: ______________________
AFPD ADEBUNMI LOMAX
ATTORNEY FOR DEFENDANT

Date: 8/31/26 By: ______________________
RAFAEL ALBERTO VARGAS GONZALEZ
DEFENDANT